**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 25-10401 -cgb** |
| **Cathy Deandra Priester,** | ) | |
| | ) | |
| Debtor. | ) | **Chapter 7** |

| | | |
|---|---|---|
| **Cathy Deandra Priester** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Adversary No. 25-01026-cgb** |
| | ) | |
| **United States of America** | ) | |
| **Department of Education,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1.  Cathy Priester, Debtor/Plaintiff brings this action for the discharge of her federal student loan debt under the "undue hardship" provision set out in 11 U.S.C. § 523(a)(8).

2.  Plaintiff filed her bankruptcy case under Chapter 7 of the Bankruptcy Code on March 27, 2025 , the Court filed an order of discharge on June 27, 2025 and the case has been closed. Prior to her bankruptcy closure, Plaintiff filed her adversary action on seeking to determine the dischargeability of his student loan debt on June 23, 2025.   This Court has jurisdiction over this action under 28 U.S.C. § 1334. This  proceeding is a core proceeding. Plaintiff and Defendant have consented to the entry of final orders of judgment by the Bankruptcy Court in this matter.

3. One of the unsecured debts owing by Plaintiff and listed in her schedules is a student loan owing to Defendant, Department of Education. With accumulated interest, the approximate amount owed on the student loan when this case was filed was $16,000.00.

**Plaintiff used her federal student loans to get a degree in 2005**

4. The student loan debts were incurred to pay tuition at the University of Texas. Plaintiff earned her BA in Psychology at University of Texas at Austin in 2005.

5. Plaintiff's federal student loans entered repayment on <u>November 26, 2005</u> – a few months shy of twenty years before Plaintiff filed her Chapter 7 bankruptcy.

6. Plaintiff consolidated her student loans in February 2006 and then again on October 14, 2022 she consolidated her federal student loans into a Direct Consolidation Loan.

**In the twenty-years since the loans became due, Plaintiff has paid over $20,000**

7. At the time of the first consolidation in February 2006, Plaintiff's federal student loan balance was $27,331.80.

8. From 2006 through 2022, Plaintiff made payments totaling approximately $20,582.80 towards her federal student loan obligations. Of that, $14,038.29 was applied to principal and $6,497.82 was applied to interest.

9. Plaintiff made regular monthly payments for extended periods, including a continuous period of approximately eight years between 2014 and 2022.

10. Plaintiff repaid a Federal Perkins Loan in full in October 2021 and repaid a Direct Consolidated Subsidized Loan in full in April 2018.

11. Plaintiff has never defaulted on any federal student loan obligation during the entire repayment period from November 2005 through the filing of this adversary proceeding,

but she has been unable to make any payments in recent years due to low income and health issues.

12. Plaintiff enrolled in the Saving on a Valuable Education ("SAVE") income-sensitive repayment plan on or about October 13, 2023. In August 2024, Plaintiff's loans were put on administrative forbearance.

13. Plaintiff's calculated monthly payment under the SAVE plan was $0 based on her income. However, SAVE is no longer and Plaintiff's loans will have to move to another payment plan by October 2026 according to recent announcements by the current administration.

14. Plaintiff could enroll in either Income-based repayment or the new plan, Repayment Assistance Plan, for which details have not yet been provided but would, it is believed, add five more years to her student loan payments before forgiveness. Under IBR – income based repayment – Plaintiff will owe payments for another sixty-six months before forgiveness; however, she would not be able to afford payments that were higher than the accumulating interest.

**Plaintiff has severely cut her expenses by subletting a room and driving a 2009 vehicle; however, her income is still too low to meet her basic needs**

15. Plaintiff's 2025 tax return shows that her gross income from self-employment was $5,612.52 and she had no other income. Her gross monthly income – before subtracting out expenses from her business – would be $467.67.

16. Plaintiff is temporarily providing caregiving assistance to her 62-year old disabled sister, who has multiple chronic medical conditions. In the later months of 2025, Plaintiff had less time in the day currently to work on her business as she assists her sister, who's multiple chronic conditions severely limit her abilities, with medication management,

breathing treatments, leg wrapping, meal preparation, household cleaning, transportation to medical appointments and church, and other daily living tasks.

17. Plaintiff will not be providing care for her sister in the long term. She will be returning to living on her own (or in a sublet space) soon. Prior to the necessity of caring for her sister, Plaintiff had given up her apartment and let a room in a shared space, dropping her rent to $400. She hopes to be able to keep her expenses low by finding a shared rental arrangement; however, even with a very low rent, Plaintiff's expenses are still greated than her income (*See Schedule I and J from 2025 bankruptcy filing.*)

**Plaintiff's chronic, progressive medical issues limit her income-earning potential, making it unlikely that she will be able to reduce the remainder owing on her student loans in the six years before she would be eligible for loan forgiveness.**

18. Plaintiff has been diagnosed with endometriosis, a chronic, progressive medical condition that limits her ability to work any job requiring her to work steadily or to work on an employer's schedule.

19. Plaintiff underwent surgery related to this condition in 2017.

20. Additional surgical treatment was recommended in 2025 but Plaintiff has not been able to afford to take the time and she currently cannot afford the surgery.

21. Plaintiff has health insurance through the marketplace which is $30 a month, but she still must budget for specialist and doctor copays, deductibles, medications including over-the-counter and those that are not covered by insurance. Plaintiff hopes to increase her income to the levels it was in the 6 months before filing bankruptcy; however, that may still not be enough to cover her needed medical expenses. Paying anything extra, such as student loan payments, will create a further hardship.

/

**Plaintiff's only asset apart from the 2009 Honda is her small retirement account, which she cannot use without high tax penalties that would only increase her inability to meet expenses**

22. Plaintiff holds retirement assets in tax-advantaged retirement accounts intended for future retirement. Plaintiff's retirement assets total approximately $46,717.18.

23. Plaintiff hopes that she will not have to use her retirement assets for healthcare before she can withdraw them without facing large tax consequences, but as she needs surgery, she may have no choice. As she is low income and self-employed, Plaintiff is not currently contributing to social security, making this account even more likely to be necessary in retirement.

24. Plaintiff cannot take a loan from this retirement as it is not linked to a current employer; so if she needs any for her recommended future surgery(ies), she will be forced to pay a high amount of tax.

25. If Plaintiff is forced to take money from the account to pay the loans, she will be paying more than is owed due to the high tax rate for early withdrawals. This will create a hardship as she needs the small retirement account for retirement and in an emergency, she needs it for healthcare.

### CONCLUSIONS OF LAW

26. Plaintiff seeks a determination that the debt owed to the Department of Education is dischargeable under 11 U.S.C. § 523(a)(8), which provides, in pertinent part, that a debt for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded by a governmental unit, is not dischargeable in bankruptcy unless excepting the debt from discharge would impose an undue hardship on the debtor and the debtor's dependents.

27. The statute does not define "undue hardship," and that task has been committed to the courts. The leading case on the standards for "undue hardship" is *Brunner v. N.Y. State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987). The Fifth Circuit has adopted the analysis in *Brunner*, see *In Re Gerhardt*, 348 F.3rd. 89, (5th Cir. 2003), and *In Re Thomas*, 223 F.App'x 310 (5th Cir. 2007). See also, *In re Pena*, 155 F.3d 1108 (9th Cir. 1998); *Faish v. Pa. Higher Educ. Assistance Auth.*, 72 F.3d 298 (3d Cir. 1995), *cert. denied*, 518 U.S. 1009 (1996); *Cheesman v. Tenn. Student Assistance Corp.*, 25 F.3d 356 (6th Cir. 1994), *cert. denied*, 513 U.S. 1081 (1995); *Roberson v. ll. Student Assistance Comm'n*, 999 F.2d 1132 (7th Cir. 1993); *Ammirati v. Nellie Mae Inc.*, 187 B.R. 902 (D.S.C. 1995), *aff'd*, 85 F.3d 615 (4th Cir. 1996). *Gerhardt* required the debtor to prove that:

    a. The debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for self and dependents if forced to repay the loan;

    b. Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for the loan; and

    c. The debtor has made good faith efforts to repay the loan.

28. "Dischargeability should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993). To determine whether repayment will impose an undue hardship, the first and second parts of the *Brunner* test require consideration of the debtor's expenses and income potential, as well as the payment term and the installment amount required for the loan. The Department makes available a variety of income-sensitive repayment options for financially distressed debtors that allow the debtor to make reduced installment payments, over an extended payment period, based on the debtor's ability to pay.

**Plaintiff satisfies the first prong of the *Brunner* test as she cannot maintain a minimal standard of living if required to repay, even with an income-based repayment plan**

29. Based on the Findings of Fact ¶¶ 15-17 and her bankruptcy schedules, Plaintiff's income is insufficient to cover her documented monthly living expenses.

30. Based on the Findings of Fact ¶¶ 15-17, Plaintiff has undertaken substantial expense reductions, including significantly reducing housing costs.

31. Plaintiff's payments under income-based repayment may continue to be very low even without the SAVE program; however, she cannot pay the basic expenses for a minimal standard of living on her current income already, so anything additional would be a hardship. She would not get forgiveness of the debt until she makes it through 66 more months of these payments. During that time, her interest would continue to increase, causing the amount owed to increase even further.

32. If the federal government then "forgave" the remaining debt, there would be tax owed on the forgiven debt (the colloquially named "tax bomb" resulting from the fact that no longer is student loan forgiveness tax free.)

33. Plaintiff has already done all she can to cut her expenses. Forcing her to pay the taxes from forgiving student loans would create a hardship.

**Plaintiff satisfies the second prong of the *Brunner* test as her financial circumstances are likely to persist.**

34. Based on the Findings of Fact ¶3-11, Plaintiff has been working to pay her student loans when she could and yet after almost twenty years, she still owes almost as much as when she first entered repayment.

35. Based on the Findings of Fact ¶¶ 18-21 Plaintiff has a chronic medical condition that she cannot afford to treat. At present, she cannot even afford health insurance,

36. Based on the Findings of Fact ¶¶ 16-17, Plaintiff's ongoing caregiving responsibilities constitute an additional circumstance indicating that her current financial condition is likely to persist.

37. Based on the Findings of Fact ¶¶ 3-11and ¶¶ 118-21, Plaintiff's income history and caregiving responsibilities support a conclusion that her financial circumstances are unlikely to materially improve.

**Plaintiff satisfies the third prong of the *Brunner* test as she has made good-faith efforts to repay her student loans for almost twenty years before filing her Chapter 7 bankruptcy**

38. Based on the Findings of Fact ¶¶3-11, Plaintiff has been in repayment for nearly twenty years and has made payments totaling more than $20,000.00 and paid off two of her federal student loans.

39. Based on the Findings of Fact ¶¶ 3-11, Plaintiff consolidated her loans and participated in available repayment programs or requested forbearances when necessary.

40. Based on the Findings of Fact ¶¶ 3-11, Plaintiff has demonstrated sustained, good-faith efforts to repay her student loan obligations.

## <u>CONCLUSIONS</u>

Plaintiff asserts she has proven that his student loans are dischargeable.

Respectfully submitted,

_____
Amy Beth Clark, TX Bar No. 24043761
amy@cimentlawfirm.com
Ciment Law Firm, PLLC
221 Bella Katy, Dr.
Katy, Texas 77494
Ph: 833-663-3289
eService: cpfiling@cimentlawfirm.com
Attorney for Plaintiff, Cathy Priester

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of Representation and Designation of Lead Counsel was mailed, first class or delivered via the ECF system or email to interested parties attached on this the 31st day of March, 2026.

DEBTORS:
Cathy Priester
catvangogh@gmail.com

STANDING CHAPTER 7 TRUSTEE:
Randolph N. Osherow
342 W. Woodlawn, Suite 100
San Antonio, TX 78212
rosherwow@hotmail.com

UNITED STATES ATTORNEY
Justin R. Simmons
Steven B. Bass – Assistant United States Attorney
903 San Jacinto, Suite 334
Austin, Texas 78701
512-916-5858
Steven.Bass@usdoj.gov

_____
Amy Beth Clark